The next matter, No. 24-1425, Rohini Meka et al. v. Hanny Haddad et al. At this time, would counsel for the appellants please introduce themselves on the record to begin? Good morning, Your Honors, may it please the Court, Attorney Ingrid Hallstrom on behalf of the petitioners. We would like to reserve one minute for rebuttal, please, if I may. Your Honors, this matter is before the Court on appeal for a decision granting summary judgment in favor of the defendants on the entire case as a whole, but more specifically with regards to, first, the informed consent claim brought by the petitioners and specifically by Mrs. Meka with regards to her delivery on March 23rd of 2017. Let me ask you a question. Yes. For the informed consent, even if the evidence that was not considered, because the district judge struck that, you would still have a case, correct, in your view? Correct. In our view, Your Honor, that we would still have a case, even without a negligence claim or anything else, because the informed consent claim would still survive in the petitioners'  And that would be a genuine issue of material fact? Correct. That is correct. No, it's not negligence. It's simply informed consent.  It's an informed consent case. Specifically, Ms. Meka testified, and the citations are within my brief as well as within the joint appendix. She specifically testified that when she was going through the birth of her child, at 7 a.m. on March 23rd, which we know from the medical records, a previous obstetrician, Dr. Mikic, had consented her for a cesarean section, and the plan at that point was to go forward with a cesarean section. 7 a.m. is when there's the shift change, and Dr. Haddad took over the care of Ms. Mika at that time. Dr. Haddad changed the plan and instead said, we're going to do a forceps delivery. He disclosed no risks of doing a forceps delivery as opposed to a cesarean section. The responsive point, though, is that under Massachusetts law, for an informed consent claim, there must be materiality on the thing that needs to be informed about, and that has two prongs, severity of the injury and likelihood of the occurrence. So I don't understand how you can just say, a forceps delivery was done. Aha! I mean, that's basically what you'd have to do because you don't have anybody to talk about severity of the injury or likelihood of occurrence. How would that? I don't understand how that could possibly be. Well, respectfully, Your Honor, I would disagree because, first of all, the medical records of Ms. Mika's subsequent treating physicians do specifically talk, and if you turn to Joint Appendix, page 236, Dr. Musman specifically discusses the fact that the delivery itself is what fractured Ms. Mika's pubic bone, and that it was such a traumatic delivery that it fractured her pubic bone. And those medical records, including Dr. Musman's opinion, would come in. And do I need to say it was caused by the forceps? Yes. And it says in there that it was such a traumatic delivery that it actually caused the fracture of her pelvis. And secondly, Your Honor, That's not the same thing. It's a traumatic delivery. With enough force that caused the fracture to her pelvis. Related to the use of the forceps? Correct. Because that's how the child was delivered, was by forceps. And it says that in the medical report? It does, at page 236. And just so I'm understanding, even aside from this, I understand why that's relevant to the negligence claim? Yes. Just for the informed consent claim, is this relevant to the informed consent claim? It is, to the extent that the informed consent, when you're talking about what the injury is that resulted out of the informed consent. Because it's not, unlike what my brother has argued, that it's the specific risk of pubic fracture that would be required. Ms. Mika wasn't disclosed any risks of trauma to either her or her fetus. But more specifically, with regards to her, of the potential. What is the evidence you would have put forward that there was a likelihood of any kind of injury from this kind of delivery, such that it's material? What would you have put forward? So Ms. Mika would have testified that had she been properly getting informed consent. And Dr. Haddad had testified, now it's not on the record before your honors, so it's a little bit difficult. But Dr. Haddad had testified about, he claims he did inform her of the risk of maternal injury from using forceps. Which of course is the disputed fact, where Ms. Mika says, I was never disclosed the risk of maternal injury from the risk of forceps. In fact, all Dr. Haddad told me was that he's very experienced in using forceps, and that's the way, you know, let's do forceps. As opposed to, and never offered her in fact, a cesarean section, which is an alternative type of birth. I'm just confused. There's the question of what would follow from this type of delivery. And then there's the question of the informed consent question. I thought the district court's finding was that the reason the informed consent claim failed was because there was a lack of expert evidence related to the informed consent itself. That is what the district court found. However, as I've cited and... So even just on, even if it were the case that there was a record basis for concluding that this mode of delivery had this consequence, that wouldn't answer the district court's ruling that the informed consent claim fails because there wasn't the required expert evidence to support the claim of a lack of informed consent, right? That was the district court's ruling, Your Honor, respectfully based on the Cook case, which is cited in my brief, where in fact that was a case in the Massachusetts state court, not federal court, but did proceed to trial without an expert disclosed. Was there any argument that that was an error or that you needed an expert there? Well, in fact, Your Honor, the lower court in Massachusetts had at first dismissed all claims including the informed consent claim in Cook because there was no disclosed expert on informed consent. And it was overturned on appeal and sent back for a trial on the informed consent claim. Was the issue there joined on appeal about whether you needed expert evidence? That was one of the issues that was specifically decided and that in not, while typically in general an expert is required, it is not necessarily always required if it is something within the context of a layperson, which here we would argue it is. A layperson can very simply understand that it is required by the informed consent that the physician disclose the risk of injury, if there is one, to the mother and fetus. Dr. Haddad is going to testify that he knows that there is that risk of injury, and Ms. Mika would testify that that was not disclosed to her and that it was material to her decision and she would have elected to go with a C-section, which she had already consented for. When you say, with respect to the knowledge of the risk of injury, what is the jury supposed to deduce from that? I mean, what do we mean by that when you say that there is a risk of injury? Is there a risk of injury from any mean of delivery? Well, to an extent, yes, Your Honor, but Dr. Haddad, if memory serves, in his deposition, and I am happy to supplement my appendix with those relevant portions of the deposition transcript. They weren't before the lower court, which is why they are not attached here. But Dr. Haddad had specifically... We want you to stick to the record that you have an appeal. You know, Ms. Mika certainly is going to testify she wasn't disclosed with any risk of injury, specifically from the four steps delivery as opposed to a cesarean section, which she had already consented to, and I think that is the key point. But the likelihood of an injury occurring is negligible. There is no duty to disclose. How are we supposed to know whether we are within that standard or outside of it without an expert opining on that? That seems to be the district court's problem. And I think that would be solved, Your Honor, by looking at medical records and looking at other consent forms that were signed by Ms. Mika, which talk about, for example, the cesarean section and the risks associated with that, and there are standard forms. The discussion was never held with regards to this four steps delivery, Your Honor. It just simply didn't occur, at least according to Ms. Mika, and we understand that is a disputed fact, and ultimately... I accept it didn't occur, but sometimes it need not occur. I mean, that's what the Massachusetts law says. There are medical procedures that take place where no informed consent is required because the likelihood of the injury is sufficiently low or the severity of the injury is sufficiently low. If those are the situations, you don't... The doctor has no duty to disclose. Do you agree with that? I would say that for very rare type complications, yes. However, I think that it would be clear, just from Dr. Haddad's testimony, that he was aware that there was a risk of maternal injury that needed to be disclosed, and simply that would be before a jury in this instance. So you get around the expert requirement because the doctor himself takes a position that he didn't give the consent? Correct. And where is that evidence in the record? It's unfortunately not in the... Because it wasn't before... It wasn't on the motion for summary judgment transcript, so it's not within the joint appendix. I don't understand. You didn't identify it in opposing the motion for summary judgment? It wasn't at that time, no. How do you know? I took his deposition, Your Honor. But you just... When you opposed the motion for summary judgment, you didn't refer to it? It wasn't at that time, no, Your Honor. What do you mean, it wasn't? No, it wasn't. It wasn't referred to. It was not referred to. It was not referred to. So how is the district court error... But I guess I don't understand, but because we're on de novo, you just say, in fact, there is a material dispute of fact because of this? Well, there was... And what about our case law that says you can't raise issues for the first time on appeal that you haven't raised below? And, Your Honor, there was statements of fact, and one of the statements of fact, which was raised in the motion for summary judgment, was that there was no risks at all disclosed. But that's a different point than saying that the doctor himself makes up for the lack of expert testimony, which is a very frequent thing in medical malpractice cases, where that's a common claim by the plaintiff is, yes, I don't have an expert, but I don't need it because you yourself are saying the thing. But if that's not raised below to the district court, we don't typically let you come up on appeal and say, okay, well, now that I've seen you didn't like what we said before, how about this idea? What's your answer to that? Your Honor, I don't... I can't recall why it wasn't raised in the original motion for summary judgment. I don't have a response beyond that. Okay. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good morning. May it please the Court. My name is Michael Lavoie. I'm here on behalf of... Do you mind just raising your microphone a little bit? Yeah. That's great. Thank you. My name is Michael Lavoie. I'm here on behalf of the defendant appellees, Dr. Haddad. Dr. Haddad, thank you, and Valley Women's Health Group. Appellees would like to focus on three points today. First is the notice of appeal in the scope of the court's jurisdiction. Second point is whether the district court abuses discretion in denying the motion for reconsideration. And the third point is whether the district court erred in allowing the defendant's summary judgment after it properly denied the plaintiff's motion to reconsider. As to the first point, the defendant acknowledges that appellate rule 3C has the... Why wouldn't the discovery ruling here just merge with the summary judgment ruling? I'm sorry. Say it. Why wouldn't the discovery ruling here just merge with the summary judgment ruling, which is being appealed from, because we don't want people appealing from interlocutory orders. So I thought the rule was it's better when you don't do that, but when you appeal from the final order, all the relevant interlocutory orders merge with that final judgment. That is correct, Your Honor, and the defendants acknowledge that. Do you have some other reason why there's no jurisdiction then? I would say that there would be a limited scope of the court's review just based off of what was contained in the plaintiff's appellant's brief. Based on what's in the brief? Yes, Your Honor, and all that's in the brief addresses the denial of the motion to, as it was coined, vacate, and otherwise the allowance of the motion for summary judgment, and that is the scope. It's the defendant's position at argument that that is the scope of the court's review. Why don't you move to the third issue? Yes, Your Honor, so the allowance of the summary judgment was proper because the plaintiffs require an expert in order to testify on two elements of informed consent. The two overarching elements, a duty to disclose information to the patient, and the second element is causation, that the breach of that duty resulted causally in some harm to the plaintiff. A sub-element to the duty requirement is, just as we were talking with my sister, that there be evidence as to what the physician should know, and that requires an expert. And I know my sister referenced before that there may be some records, some subsequent treating records that the plaintiff What is your contention that the expert would need to fill in for a lay jury about what the doctor needed to know, about whether there was risks of this type of delivery, which is an unusual type of delivery? Well, a forceps-assisted delivery is not necessarily unusual, but a pelvic fracture in the process of a forceps-assisted delivery is. That is very uncommon. There's some risk that goes with the forceps. Well, in this case, the only evidence in the record is the anticipated testimony of the defendant's expert, Dr. Ralston, who says there's really no discernible risk of using forceps in terms of a pelvic fracture in the course of a forceps-assisted delivery. But for the informed consent, the question isn't whether the actual thing that came to pass is something about which you had to be apprised of. It's just generally whether there are health risks, and then there would be an alternative to it. Isn't that right? I would disagree with you, Your Honor. I thought you had an independent interest in having informed consent to choice, not being informed that this particular thing that did happen to you is something that could have happened to you. Am I wrong about that? Well, yes, Your Honor, because the causation element requires that the risks that was not disclosed have manifested. So a specific risk has to be identified by the plaintiff in order to prevail, and that risk must be what caused the plaintiff's injury. And in this case, the link is the forceps-assisted delivery with the pelvic fracture. So why wouldn't the risk be that I understand that you have to show there was an outcome that was tied to this practice, but I thought the idea of informed consent was I inform you of the risks of a medical procedure generally. That way you would know about an alternative. If you had the alternative, there's reason to think the outcome would not have occurred. That's different than saying what you're entitled to be informed of is only the risk of the actual outcome that did occur, because the causation would be if I had known of the alternative, I would have taken the alternative. Is that not right? I do think you may be off a little, Your Honor, because the Massachusetts case law requires, with respect to the duty element, whether or not a particular risk has to be. Does that have to be the risk that came to pass? Yes, Your Honor. Yes. And that's the reason why expert testimony is required, is because that particular narrow risk is either negligible and doesn't have to be disclosed or there is an appreciable risk. And I don't mean to keep our plans beyond this last question, but the logic of what you're suggesting is if there's 10 risks associated with a procedure, I only have to bet that, well, as long as only one of the 10 comes to pass and that's the least likely of the 10, I don't have to tell them about it. Even though if I told them all 10, 9 of which are relatively likely to come to pass, they might have foregone the procedure altogether. That's how informed consent works in Massachusetts. It is, Your Honor. Yes. The analysis that Massachusetts courts have engaged in, Your Honor, is not to put undue burden on the practice of medicine. There are some risks that might be so severe that a patient would like to know about it, a reasonable patient would like to know about it under circumstances. As long as it doesn't come to pass, we don't have to tell you about it. Well, of course, Your Honor. There has to be some type of injury in order for there to be a cognizable claim. Okay. Suppose I thought that's not how Massachusetts law worked and the issue here is simply whether the risks of this means of delivery was something that would have been known to a physician and whether a lay person could have known just generally risks associated with this and that there was an alternative, which was a C-section. Do you say even then you need an expert that that's not like falling on the floor and breaking a bone? Yes. That's not as evident? Correct. What helps us figure out that you're right about that? Well, in the record, I can point the court to Dr. Ralston, the maternal fetal medicine expert at page 45 of the joint appendix. He testifies and points specifically to the American College of Gynecologists, bulletin number 219, where they discuss forceps-assisted delivery and risks associated with forceps-assisted delivery. And there's no mention of pelvic fracture. I understand that, but is there a mention of risks in bulletin 219 other than pelvic fracture? Yes. And how many risks are there? A lot? A non-trivial number. Sure, a non-trivial number. And were any of those disclosed to this patient? Not that would be contained in this record, Your Honor. And is C-section an alternative to those? Yes, Your Honor. C-section is an alternative. And that wasn't disclosed to her either? Well, C-section was discussed. The patient had previously consented. The patient did not disclose to her the alternative of a C-section, or did he? He did not, but in this record, Your Honor, under those circumstances. And just last thing on this, I understand the point about the pelvic fracture is not a significant risk of this means, and therefore that one position you have is therefore that didn't need to be disclosed to her, even though there are other risks associated with this process which were not disclosed to her. Is it your contention that a lay jury would need an expert on this record to know that there were other risks associated with the forceps delivery? No. Any punitive expert for the plaintiff would have to testify as to is this specific risk of pelvic fracture in order to prevail on a claim. Take his premise that you don't need that. If you just had the cases literally, there was a forceps delivery, this happened to her, whatever that is which is bad, is that enough because a forceps delivery is just inherently a risky procedure with potential injuries such that you need nothing else but to know one fact, which was it was a forceps injury. Under that hypothetical, that case could not prevail. You would need an expert in order to testify as to that the risk of whatever the harm that came about was an appreciable risk that the physician should have known about and the physician also should have known to have disclosed it. But that expert was struck, correct? Correct, Your Honor. Now let me, I don't want to interrupt the line of questioning, but going to the striking of the expert, why isn't that an abuse of discretion? And let me just maybe, based on my experience in following circuit case law in the past when I was a district judge, you know, district judges are taught you don't automatically once or twice necessarily strike. Maybe you sanction the attorney, you sanction the client. That didn't happen here. It was basically two instances and the witness is stricken. Is that an abuse of discretion or should the judge provide us another alternative or other type of sanction or like you have one last opportunity, maybe until next week you're sanctioned X, Y, and Z, and if you don't do it, then here's your fair warning? Because it appears to me that is lacking in the record, that warning. I think in this case, if we're just focused on whether or not a warning is a type of prerequisite for this type of sanctioned preclusion of experts, defense would argue that there is a warning in this record, and that warning was before the email. One of the elements in whether it's an appropriate remedy is striking is the significance of it to the case. And based on your argument, it couldn't be more significant. And so it does feel like there were lesser things that could have been tried to get the plaintiff's attention than basically ending the case, which is what the judge did essentially. I'm sorry. Well, that's my concern. I think what sets this case apart from a case like Esposito v. Home Depot is that it's not undisputed. I know it's a little paradoxical in a way, but it's not undisputed that the preclusion of the experts carried with it the force of dismissal. Now, you're right that we're taking the position that it is, but it's a distinction from a case like Esposito because it's not undisputed. And to get back to that response here. Well, it's a little bit strange given that it was from the district court's perspective he was ordering, or I don't remember if it was a man or a woman who was the district court, was ordering a sanction that was dispositive in the eyes of the district court. It encouraged the dispositive motion based on having struck to the expert. True, and that is the position that we're taking here, of course, as well. Am I right that what happened is that there was an opportunity for the plaintiff to correct the record effectively to avoid the sanction and that that wasn't taken until very late in the day? That is correct. And that's after a hearing in front of the district court in which it would have been perfectly sensible to raise all the points that were then later raised at the time of the summary judgment, is that right? Or not right? Maybe not entirely right, just under the facts leading up to. This wasn't clear from the record to me. There was a status conference on 1-30 that didn't happen. Was there actually a status conference after that where the parties got together with the judge? No, Your Honor. I think the status conference you're referring to, I think it was the January 2nd status conference after the preclusion of the experts that plaintiffs did not show up to. Right, and then it got rescheduled. But that was after the preclusion of the expert. That was after the preclusion of the expert. Right, I know, and then the judge said, all right, some excuses were given for missing the status conference, so I'll reschedule it. Did that ever happen? Was there a conference with the judge subsequent to that? No, Your Honor. So when the preclusion of the expert happens, what has happened prior to that ruling? So prior to that ruling, Your Honor, there had been multiple extensions of the expert deposition deadlines. And the last extension… The plaintiff wasn't making available their experts? The plaintiff was not making available their experts. The last extension… And so then finally the district court says, okay, so then no expert for you. And then yet, notwithstanding that ruling, the next time the plaintiff is heard from to say this is not right is at the summary judgment motion, which is how much longer? Months later, right? Almost three months later. Yeah. But let me ask you, again, going to the abuse of discretion standard, and, again, I'm not saying what the judge did was right or wrong, but just hypothetical, shouldn't the judge basically have done this and say, expert has not been available, I'm giving you one last week. If you don't make it available within the next week, I'm striking. And should the judge have done that before? Or is he simply free to say it hasn't been done, I'm striking? Well, I think the judge is free to do that under these particular circumstances. What are these circumstances? What's the key fact that makes it permissible to do it when the preclusion happened without the warning? So, and, again, I would say there is, you know, making a distinction as to who the warning is coming from, in the fourth email that defense counsel sent to the plaintiffs requesting for depositions of their experts, it was specifically referenced expressly, we will have to move to preclude your experts if we don't get dates. And what was the response after that filing? There was no response. Okay, thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce yourself on the record. She has one minute rebuttal. So I'm going to chew up your minute because I don't understand, I never understood sort of what is happening in December that there's, you know, the motion to strike happens, there's no response, the motion is granted, the status conference is missed, the expert motion is there, the judge reconfirms the expert stricken, and there's no response through that whole period, which now is multiple months. It doesn't make sense. If I may, and just for the record, Attorney Ingrid Halstrom on behalf of the appellant, I believe I just need to put my name back on the record. Your Honor, as I believe it is referenced in the underlying motions, at that point in time, starting sometime, I believe, in November, and I can't give an exact date, we encountered a server issue with our law firm. Was there co-counsel? I'm sorry? Was there co-counsel? Also at the same firm, same issue. It was a server issue. We were not receiving emails. And when is the first time that the district court is apprised of that fact? I believe it was in January, Your Honor. I believe. It was in my papers. I apprised the court of the fact that we had not received those emails, and that specifically was important because local rule, I believe it was 37.1 with regard to a conference, I never received the fourth email from defense counsel.  I'm sorry? You knew about the ruling precluding the expert, didn't you not? Not until after it had entered, Your Honor. Not until weeks after it had entered. And then how much longer was that before you made any argument to the district court that that preclusion was an error? I believe it was a month or so, Your Honor. So the motion to strike is granted on December 11th. Right. Nothing happens. Status conference is scheduled January 30th because nothing is happening. You don't attend that. You raise the email problem. Now you're on notice, like the judge is doing stuff. You're not responding. And then February 16th, the judge issues another order saying, let's everyone know, the expert is still stricken. Right, and I believe there was, in that interim, there was some communication with the court, Your Honor, because there was motions that are not, I believe, not in the record because they weren't directly on this. But it was dealing with alerting the court as to certain issues, and it was raised by me because, in addition, one of the issues had been I had never received notice of the rescheduling. It was a rescheduled status conference. The district court, if I understand it, is frustrated that there's been no availability of these experts. And then after the district judge makes the preclusion ruling, there is a long period of time before we get to summary judgment when it's all of a sudden now said, I want to challenge your preclusion ruling. And the district court is of the view that, managing my docket, I can't operate that way, and so maybe if you had come to me sooner about it or been more timely with it, but why is that an abuse of discretion? Your Honor, I think what it stems back to is the fact that the order was entered in the first place on the fact that there was no attempt under local rules, which was required of my brother to, in fact, confer with me, which he did not before filing of the motion under local rules. How did you find out you missed the January status conference? At that point, Your Honor, I had become aware of the e-mail issue and had been able to change the e-mail that was associated with the U.S. district court. So when a notice went out from the court alerting me that I had missed that status conference, I immediately replied. At that point, that was... And did you check the record? I mean, to me, if once I find out, wow, my e-mail isn't working, I haven't heard anything about this case in months, I would have a stomachache and want to go check the record to see what had happened during my blackout period. Correct, and I had checked it earlier that week, Your Honor, and what happened was after the date that I checked the docket confirming the status conference, that's when the time was changed on the status conference. That's right, but when you went to look, didn't you go back and see, my goodness, on December 11th, the judge struck my expert. I better do something about that. And I knew, Your Honor, that we had the upcoming status conference, and the plan was to discuss it on that date with counsel and the judge. And then the time for the status conference was changed. I'm going to take 30 seconds to say whatever you want to say. Your Honor, and then just finally dealing... You know, my brother, I believe, Your Honor, hit it directly on the head. ACOG Bulletin 219 does specifically lay out that there are multiple risks. And what about the point, his account of Massachusetts law, that the only risk about which you need to be informed of for informed consent is the risk that actually manifests? That is not accurate, Your Honor. You don't have to actually disclose that the risk is going to be that you're going to have a pubic symphysis fracture. It's enough that the risk disclosed would have to be that there can be maternal trauma to the pelvic area, and what, you know, the types of trauma... But it has to be that specific? I don't even think it has to be that specific, Your Honor. What do you think it has to be? I think that there are risks associated with forceps delivery, including but not limited to maternal trauma, which is what occurred in this case, quite simply, maternal trauma, which resulted in the pelvic fracture. Is it significant to you or not that there be mention of maternal trauma? Maternal trauma. I'm saying maternal trauma. Maternal, yes. The mother. I got it. I got it. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument.